DJW/2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RAYNOR MFG. CO.,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.  07-2421-DJW** |
| | ) | |
| **RAYNOR DOOR CO., INC., and** | ) | |
| **KELLY STONER and** | ) | |
| **JANET STONER, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment on Counterclaim (doc. 65) filed by Plaintiff Raynor Mfg. Co.  Plaintiff moves for summary judgment in its favor on Defendant Raynor Door Co., Inc.'s Robinson-Patman Act counterclaim.[1]  The Motion is fully briefed and, thus, is ripe for consideration.  For the reasons set forth below, the Motion is granted.

## I.     BACKGROUND

Plaintiff brought an action against defendants Raynor Door Co., Inc., Kelly Stoner, and Janet Stoner alleging trademark infringement and unfair competition, and Defendant Raynor Door Co., Inc. ("Defendant") counterclaimed for alleged violation of the Robinson-Patman Act, 15 U.S.C. § 13.[2]  Plaintiff is an Illinois corporation in good standing with its principal place of business in Dixon, Illinois.[3]  Plaintiff has been a manufacturer of sectional doors, including commercial and residential

---

[1] The Court has reviewed the Memorandum in Support of the Response and Objection to the Motion for Summary Judgment (doc. 72) ("Memorandum in Opposition") and the Pretrial Order (doc. 63) ("Pretrial Order"), and it appears that only Defendant Raynor Door Co., Inc. has asserted a Robinson-Patman Act counterclaim against Plaintiff.

[2] *See* Pretrial Order, 1, 10, 18 and 21.

[3] *See id.*, at 2.

garage doors and related products, since 1944.[4]  Defendant, a Kansas corporation formed in 1992, sells commercial garage doors and related products.[5]  Defendant is 100 percent owned by Defendant Janet Stoner, and operated by Ms. Stoner and her husband, Defendant Kelly Stoner.[6]

Defendant claims that Plaintiff violated the Robinson-Patman Act based on the following allegations:

> [R]elevant sales were made in interstate commerce; the products were of like grade and quality; the Plaintiff discriminated in price between the Defendant and another purchaser of the products in the Lawrence, Topeka, and Kansas City markets; and the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of the favored purchaser, i.e., the purchaser who received the benefit of such discrimination . . ..[7]

The only "favored purchaser" identified by Defendant is Raynor Door Company of Kansas City ("RKC").[8]  Defendant claims that Plaintiff discriminated between Defendant and RKC by giving RKC "blanket discounts, free shipping, and or high discounts and incentives and other methods in which the costs of the products were reduced below what the Defendant was charged for the products."[9]

Plaintiff argues that Defendant's Robinson-Patman Act counterclaim fails for several reasons, including that Defendant failed to show the requisite harm to competition, Defendant's counterclaim is barred by the statute of limitations, and Defendant failed to show the requisite

---

[4] *See id.*

[5] *See id.*

[6] *See id.*

[7] *Id.*, at 10.

[8] *See* Pretrial Order; *see also* Memorandum in Opposition, 2.

[9] Pretrial Order, 12.

contemporary purchases by Defendant and RKC.[10]  Plaintiff now moves for summary judgment on Defendant's Robinson-Patman Act counterclaim.

The Court notes that Defendant initially claimed that it was entitled to punitive damages because of Plaintiff's violation of the Robinson-Patman Act.[11]  However, Defendant states in its Memorandum in Support of the Response and Objection to the Motion for Summary Judgment (doc. 72) that Plaintiff is correct in that Defendant is not entitled to punitive damages.[12]  Thus, the Court will grant this portion of Plaintiff's Motion as unopposed.

## II.      SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(b), "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13]  A fact is only material under this standard if a dispute over it might affect the outcome of the suit under the governing law.[14]  A dispute about a material fact is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[10] *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. on Countercl. (doc. 66) ("Memorandum in Support"), 1-2.

[11] *See* Pretrial Order, 10, 13, 18, and 21-23.

[12] *See* Memorandum in Opposition, 14.

[13] Fed. R. Civ. P. 56(c).

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

party."[15]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party[16] and that it may not make credibility determinations or weigh the evidence.[17]  The Court further notes that while the parties need not provide evidence in a form admissible at trial, the content or the substance of the evidence must be admissible.[18]

A party seeking summary judgment bears the initial responsibility of identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[19] "[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[20]  Thus, the Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]  The moving party may meet its burden by pointing out to the court a lack of evidence to support an essential element of the nonmoving party's

---

[15] *Id.*

[16] *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[17] *See Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).

[18] *See Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1122 (10th Cir. 2005).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[20] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[21] *Celotex Corp.*, 477 U.S. at 322.

claim.[22]  In such cases, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[23]

If the movant meets its initial burden, then the nonmovant that would bear the burden of persuasion at trial must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[24]  Rule 56(e) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.[25]

In essence, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[26]

## III.   MATERIAL, UNCONTROVERTED FACTS

### A.   EVIDENTIARY ISSUES

There are technical and evidentiary issues the Court must consider before determining the

---

[22] *See Thom,* 353 F.3d at 851.

[23] *Celotex Corp.*, 477 U.S. at 323.

[24] *Thom*, 353 F.3d at 851 (citing Fed. R. Civ. P. 56(e)).

[25] Fed. R. Civ. P. 56(e)(2).

[26] *Celotex Corp.*, 477 U.S. at 324.

material, uncontroverted facts in this case.  In its reply memorandum, Plaintiff objects to Defendant's method of responding to several of Plaintiff's uncontroverted facts in its statement of uncontroverted facts, as well as to Defendant's reliance on the "deal file," Defendant Kelly Stoner's deposition testimony regarding the "deal file," and Defendant's reliance on the "cash flow projections."  The Court will address each of Plaintiff's objections in turn.  The Court will also consider the impact of Plaintiff's objections on Defendant's additional statement of uncontroverted facts.

### 1.     *Response to Plaintiff's Statement of Uncontroverted Facts*

In Plaintiff's Motion, Plaintiff sets out in numbered paragraph format its statement of uncontroverted facts and provides the Court with a specific citation to the record for each fact, in compliance with D. Kan. Rule 56.1(a).  Defendant chose to controvert many of Plaintiff's facts in its statement of uncontroverted facts.  Plaintiff argues that Defendant failed to fairly and specifically controvert the facts stated in Plaintiff's statements of uncontroverted fact.  Instead of meeting the substance of Plaintiff's statement of uncontroverted facts, Plaintiff argues that Defendant "simply talk[ed] about something else."[27]

Under D. Kan. Rule 56.1(a), "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless *specifically* controverted by the statement of the opposing party."[28]  In addition, the responding party is required to fairly meet the substance of the matter asserted when responding to the statement of uncontroverted facts.[29]  The

---

[27] Reply Mem. in Supp. of Pl.'s Mot. for Summ. J. on Countercl. (doc. 78) ("Reply Memorandum"), 2.

[28] D. Kan. Rule 56.1(a) (emphasis added).

[29] *See* D. Kan. Rule 56.1(e).

Court finds that Defendant failed to meet these requirements in several instances.  For example, rather than specifically controverting paragraph 4 of Plaintiff's statement of uncontroverted facts, which asserts that 90 percent of Defendant's sales to its customers, and purchases from Plaintiff, were products targeted to commercial, as opposed to residential, customers, Defendant attempted to deny paragraph 4 of Plaintiff's statement of uncontroverted facts "in part" by asserting that Defendant would have been able to compete in the residential garage door market if Defendant had received the same discounts which Plaintiff provided to RKC, the alleged "favored purchaser."[30] The Court finds that Defendant's attempt to deny this fact "in part" by making an additional assertion does not specifically controvert the fact or fairly meet the substance of the fact.

Having reviewed and considered Defendant's responses to paragraphs 4, 6, 10, 20, 21, 23, 24, 26, 27, 28, and 29 of Plaintiff's statement of uncontroverted facts, the Court finds that Defendant failed to specifically controvert these facts under D. Kan. Rule 56.1(a) and failed to fairly meet the substance of these paragraphs as required under D. Kan. Rule 56.1(e).  The Court further finds that Defendant failed to specifically controvert the first sentence of paragraph 30 of Plaintiff's statement of uncontroverted facts.  For the purpose of ruling on Plaintiff's Motion, however, the Court need not consider these facts to be uncontroverted in order to grant Plaintiff's Motion.  Thus, in ruling on Plaintiff's Motion, the Court will consider each of these paragraphs to be fairly and specifically controverted either in their entirety or "in part," based on Defendant's response.

### 2.   *Deal File and Defendant Kelly Stoner's Deposition Testimony*

Plaintiff also argues that the "deal file" relied upon by Defendant and the deposition testimony of Defendant Kelly Stoner regarding the "deal file" constitute inadmissible evidence and,

---

[30] *See* Memorandum in Opposition, ¶ 4.

therefore, cannot be considered by the Court when deciding its Motion.[31]  The Court has reviewed each of the exhibits attached to Defendant's memorandum in opposition and, although they are not labeled as such by Defendant, it appears that the set of documents Defendant calls the "deal file" is the set of documents attached to Defendant's memorandum in opposition as "Exhibit 2 - Exhibit Deposition Exhibit 40."  Plaintiff argues that the documents referred to by Defendant as the "deal file" are inadmissible because they are not authenticated as required by Fed. R. Evid. 901, and they are not sworn or certified.  In support of this argument, Plaintiff claims that there is no admissible evidence in the summary judgment record as to what these documents are, whether they in fact constitute a single "file," who prepared the documents, who received the documents, what use was made of the documents, or what the documents mean.[32]

In addition, Plaintiff argues that the deposition testimony of Defendant Kelly Stoner, Defendant's designated corporate representative, regarding the "deal file" is inadmissible evidence because he lacks personal knowledge of the "deal file" and therefore is prohibited from testifying as to the "deal file" under Fed. R. Evid. 602.  Plaintiff claims that Defendant Kelly Stoner's deposition testimony regarding the deal file is speculative and not based on first hand knowledge because Defendant Kelly Stoner received these documents after the state court litigation when Plaintiff produced the documents in response to a request for production for "all quotations, invoices, freight rates and discount documents and business agreements of any kind for" RKC and Plaintiff from 1993 to present.[33]

---

[31] *See* Reply Memorandum, 3-4.

[32] *See id.*, at 4 n. 2.

[33] *Id.*

As the Court already explained, while the parties need not provide evidence in a *form* admissible at trial, the content or the substance of the evidence must be admissible.[34]  Under Fed. R. Evid. 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[35]  Fed. R. Evid. 901 goes on to provide a nonexclusive list of the ways in which an exhibit may be authenticated, which includes testimony of a witness with knowledge that the document is what it is claimed to be.[36]  Under Fed. R. Evid. 602, a witness cannot testify to a matter unless there is evidence to support a finding that the witness has personal knowledge of the matter.  "A party may properly authenticate a document through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit."[37]  "Unauthenti-cated documents, once challenged, cannot be considered by a court in determining a summary judgment motion."[38]

Defendant has not provided any affidavit in support of its memorandum in opposition to Plaintiff's Motion.  Instead,  Defendant attempts to authenticate or identify the "deal file" through the deposition testimony of Defendant Kelly Stoner.  Although this Court is not obligated to comb the record in order to make Defendant's arguments for it, the Court has reviewed all of the scattered pages of the deposition transcripts for Defendant Kelly Stoner attached to Defendant's memorandum

---

[34] *See Bryant,* 432 F.3d at 1122.

[35] Fed. R. Evid. 901(a).

[36] *See* Fed. R. Evid. 901(b)(1).

[37] *Bell v. City of Topeka, Kan.*, 496 F.Supp.2d 1182, 1185 (D. Kan. 2007) (quotation and citation omitted).

[38] *Id.*, at 1184 (quotation and citation omitted).

in opposition to Plaintiff's Motion.[39]  The Court can find no evidence that Defendant Kelly Stoner authored the "deal file" or that he has any personal knowledge of the facts contained in the "deal file."  Thus, the Court concludes that Defendant has failed to establish that Defendant Kelly Stoner has personal knowledge of the authenticity or identity of the "deal file," and thus his testimony is inadmissible under Fed. R. Evid. 602 to authenticate the "deal file."

Defendant has not identified any other evidence in the summary judgment record to support a finding that the "deal file" is what Defendant claims it is.  Thus, the Court finds that the "deal file" has not been properly authenticated or identified as required under Fed. R. Evid. 901 and, therefore, the "deal file" is not admissible evidence.  Accordingly, the Court will not consider the "deal file" for the purpose of ruling on Plaintiff's Motion.[40]

### 3. Cash Flow Projections

Defendant also relies on a document vaguely referred to as the "cash flow projections." Plaintiff challenges Defendant's reliance on this document arguing that Defendant failed to authenticate the document as required under Fed. R. Civ. P. 56(e)(1).  It appears to the Court that page 3 of the "cash flow projection" document is attached to Defendant's memorandum in opposition as "Exhibit 3 - Exhibit Additional Exhibits" and is Bates stamped 000037.  As explained above, "[a] party may properly authenticate a document through a supporting affidavit or deposition

---

[39] *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)) ("[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record.").

[40] *See Ney v. City of Hoisington, Kan.*, 508 F.Supp.2d 877, 883 (D. Kan. 2007) ("Court will disregard all statements in plaintiff's response that . . . could not represent information based on plaintiff's personal knowledge").

excerpt from anyone with personal knowledge of the facts contained in the exhibit."[41]

However, after challenging the authenticity of the cash flow projection document, Plaintiff then admits that the first line of the projection projects "1st year [1993] commercial sales of $995,000 and 5th year sales of $1,203,950" and admits that Defendant Kelly Stoner testified that Plaintiff gave this document to Defendant in 1993.[42]  Plaintiff also attaches to its reply memorandum a letter from Plaintiff to Defendant dated February 19, 1993, which Plaintiff claims confirms Defendant Kelly Stoner's testimony that Defendant received the cash flow projection document from Plaintiff in 1993.[43]  Thus, the Court finds that Plaintiff has (likely inadvertently) provided the necessary information to authenticate the cash flow projection document and, therefore, the Court will consider the document for the purpose of ruling on Plaintiff's Motion.

### 4.    *Defendant's Additional Statement of Uncontroverted Facts*

Having found the "deal file" and Defendant Kelly Stoner's deposition testimony regarding the deal file to be inadmissible evidence, the Court will now turn to Defendant's additional statement of uncontroverted facts, which relies heavily on the deal file.  Under D. Kan. 56.1(b), "[i]f the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, *supported by references to the record*, in the manner required in section (a), above."[44]  Having found the deal file and Defendant Kelly Stoner's deposition testimony regarding the deal file to be inadmissible evidence, the Court

---

[41] *Bell*, 496 F.Supp.2d at 1185 (quotation and citation omitted).

[42]  *See* Reply Memorandum, 5.

[43] *See id.*

[44] D. Kan. Rule 56.1(b)(2) (emphasis added).

finds that several of Defendant's facts in its additional statement of uncontroverted facts are not supported by any evidence in the record.

For example, in the last two sentences of paragraph 32 of its additional statement of facts, Defendant states that Plaintiff provided RKC with "preferential pricing."[45]  In support of this fact, Defendant relies on the "deal file" and on the testimony of Defendant Kelly Stoner regarding the deal file.  Because the Court has already deemed this evidence inadmissible for the purpose of ruling on Plaintiff's Motion, the Court finds that the last two sentences of paragraph 32 of Defendant's additional statement of uncontroverted facts is not supported by any evidence in the summary judgment record.

Another example can be found in paragraph 33 of Defendant's additional statement of uncontroverted  facts, where Defendant claims that "based upon the deal file documentation" Plaintiff was giving RKC a 12.48 percent discount on garage doors and another five percent discount because of no freight costs in 2006.[46]  In further support of this statement, Defendant relies upon the deposition testimony of Defendant Kelly Stoner regarding the deal file.  Having found the deal file and Defendant Kelly Stoner's deposition testimony regarding the deal file to be inadmissible evidence, the Court finds that paragraph 33 of Defendant's additional statement of uncontroverted facts is not supported by any evidence in the summary judgment record.

The Court has reviewed Defendant's additional statement of uncontroverted facts.  The Court will disregard all facts in Defendant's additional statement of uncontroverted facts that are not supported by the summary judgment record and will construe the evidence in the light most

---

[45] *See* Memorandum in Opposition, 6.

[46] *See id.*

favorable to Defendant as the nonmoving party.  Consequently, the Court will disregard the following paragraphs of Defendant's additional statement of uncontroverted facts for the purpose of ruling on Plaintiff's Motion: the last two sentences of paragraph 32, all of paragraphs 33 and 34, the first sentence of paragraph 35, and all of paragraph 36 of Defendant's additional statement of uncontroverted facts.

### B.      STATEMENT OF MATERIAL UNCONTROVERTED FACTS

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Defendant.[47]  Plaintiff is a manufacturer of commercial and residential garage doors and related products sold throughout the United States.  From 1992 or 1993 until August, 2005, Defendant was an authorized Raynor dealer. Defendant was headquartered in Topeka, Kansas. Defendant competes in a geographic market that consists of from just east of Kansas City, west to about Fort Riley, north to Nebraska and south to about Burlington, Kansas.  Ninety percent of Defendant's business occurs between Topeka and Kansas City.

Defendant Kelly Stoner,[48] who has operated a business for 30 years, is responsible for bidding and sales for Defendant.  The market in which Defendant competes is a competitive market, with "lots of" competitors.  Defendant Kelly Stoner testified that "anybody that sells garage doors would be our competitors."  While Defendant was a Raynor dealer, Plaintiff also had a dealer in Shawnee, Kansas - RKC.  RKC and Defendant competed against each other for jobs specifying Raynor® doors.  Defendant Kelly Stoner, testifying as the corporate representative of Defendant,

---

[47] As explained above, the Court will consider paragraphs 4, 6, 10, 20, 21, 23, 24, 26, 27, 28, 29, and 30 of Plaintiff's statement of uncontroverted facts to be controverted (either in their entirety or in part, depending on Defendant's responses) for the purpose of ruling on Plaintiff's Motion.

[48] Defendant Kelly Stoner testified as the corporate representative of Defendant.

testified that he did not know of any other Raynor dealers with whom Defendant competed besides RKC.

Before 2005, CHI, Mahon and Raynor (Plaintiff's brand) were the three main brands sold by Defendant, with Raynor always being the most expensive. Over ninety percent of Defendant's sales to its customers, and purchases from Plaintiff, were products targeted to commercial, as opposed to residential, customers.  However, Defendant asserts that it would have been able to compete in the residential garage door market had it received the same discounts which Plaintiff provided to RKC.    Most  of  Defendant's  business  comes  from  bids that are solicited by contractors or owners. Defendant will learn of a project, either by finding it on-line or by receiving a request for a bid from a contractor.  The contractors provide the specifications they want for garage doors and ask Defendant and others to bid based on the specifications. Usually, the specifications can be met by any of several different garage door manufacturers.  When Defendant wanted to submit a bid on a job, it would contact Plaintiff to request a quote.  For the purposes of this Motion, Plaintiff does not challenge Defendant's allegations that Plaintiff gave larger discounts and smaller freight charges to RKC.[49] Once Defendant obtained the quote from Plaintiff, Defendant would use that quote to submit its bid for the job to the contractor. If Defendant got the job, it purchased the door(s) from Plaintiff, installed them on the job and billed the customer.  If Defendant did not get the job, it did not purchase product from Plaintiff.

Exhibit 10 to the Rule 30(b)(6) Deposition of Defendant Kelly Stoner (which was also marked as Exhibit 47 to his state court deposition) is a list prepared by Defendant Kelly Stoner of

---

[49] *See* Memorandum in Support, 2 n. 2.

the jobs that Defendant bid on but allegedly lost to RKC.[50]  Of the 15 jobs listed on Exhibit 10, Defendant Kelly Stoner identified five jobs that he believes he "lost because [he was] underbid:" (1) Senne Construction/Topeka Spec Office Park; (2) Kelly Construction/Kansas Correctional Facility; (3) Kelly Construction/Douglas County Youth facility; (4) Miller-Stauch Construction/Airborne Express; and (5) Senne Construction/CJ Industries.  Defendant Kelly Stoner testified that he lost the other jobs on Exhibit 10 because of "other circumstances," such as Plaintiff discontinuing business with Defendant.

The Senne Construction/Topeka Spec Office Park project was bid in 2002.  The Kelly Construction/Kansas Correction Center job was bid in 1999.  The Miller-Stauch Construction/Airborne Express job was bid in 1999.  The Kelly Construction/Douglas County Youth job was bid in 1999.  The Senne Construction/Topeka Industrial Park job was bid in 2002 or early 2003.

Defendant Kelly Stoner testified at the Rule 30(b)(6) deposition of Defendant that Defendant has not lost any sales or jobs to other Raynor dealers besides RKC because Plaintiff gave the other dealer a better price.  He also testified that with respect to any of the jobs on Exhibit 10, nobody ever told him that Plaintiff quoted RKC a lower price than it quoted Defendant.  Defendant Kelly Stoner also  testified that he did not know by how much RKC underbid Defendant on any of the jobs shown on Exhibit 10.

Plaintiff provided Defendant with cash flow projections in 1993.  In the first year of the projections Defendant was projected to have sales of $995,000.00 and in the fifth year Defendant was projected to have sales of $1,203,950.00.  The actual commercial sales based upon the records

---

[50] *See* Deposition Exhibit 10 (doc. 66-7).

of the Plaintiff for commercial sales were $427,954.00 in 2003, $373,686 in 2004, $305,219.00 in 2005.

Plaintiff documented the actual aggregate annual sales of residential garage doors and residential operators by Defendant and RKC in Exhibit A attached to the affidavit of Ann Conway. For the year ending 2003, Defendant purchased $15,176 worth of residential garage doors and operators and RKC purchased $545,326 worth of residential garage doors and operators.  For the year ending 2004, Defendant purchased $9,367 worth of residential garage doors and operators, and RKC purchased $586,347 worth of residential garage doors and operators.   Finally, in the year ending 2005, Defendant purchased $6,450 worth of residential garage doors and operators, and RKC purchased $526,279 worth of garage doors and operators.

Plaintiff also documented the actual aggregate annual sales of three types of commercial garage doors by Defendant and RKC.  For the year ending 2003, Defendant purchased $16,754 worth of Fire doors, $165,186 worth of Rolling doors, and $173,588 worth of Sectional doors.  For that same year, RKC purchased $4,705 worth of Fire doors, $44,595 worth of Rolling doors, and $262,391 worth of Sectional doors.  In the year ending 2004, Defendant purchased $31,155 worth of Fire doors, $128,689 worth of "Serv. Gri & CtrShtr" doors, and $155,631 of worth of Sectional doors.  In that same year, RKC purchased $6,724 worth of Fire Doors, $14,404 worth of "Serv.Gri & CtrShtr" doors, and $287,213 worth of Sectional doors.  Finally, in the year ending 2005, Defendant purchased $25,249 worth of Fire doors, $107,842 worth of "Serv, Gri & CtrShtr" doors, and $123,413 worth of Sectional doors.  In that same year, RKC purchased $39,266 worth of Fire doors, $47,411 worth of "Serv, Gri & CtrShtr" doors, and $281,937 worth of Sectional doors.

## IV.    ROBINSON-PATMAN ACT COUNTERCLAIM

Defendant contends that Plaintiff violated Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13.  Section 2(a) of the Robinson-Patman Act states, in pertinent part,

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . ..[51]

"By its terms, the Robinson-Patman Act condemns price discrimination only to the extent that it threatens to injure competition."[52]  There are "three categories of competitive injury that may give rise to a Robinson-Patman Act claim: primary-line, secondary-line, and tertiary-line."[53]  This case is a secondary-line case.  Secondary-line cases involve allegations of price discrimination that allegedly injure competition among the alleged discriminating seller's (Plaintiff's) customers - here, Defendant and RKC.[54]  To establish a secondary-line injury, Defendant must show that (1) the relevant garage door sales were made in interstate commerce; (2) the garage doors were of like grade and quality; (3) Plaintiff discriminated in price between Defendant and RKC; and (4) the effect of such discrimination may be  to injure, destroy, or prevent competition to the advantage RKC.[55]

The relevant issue in this case is the fourth element - competitive injury.  To establish a competitive injury, a party must show "a reasonable possibility that a price difference may harm

---

[51] 15 U.S.C. § 13.

[52] *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993).

[53] *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006).

[54] *See id.*

[55] *See id.*, 176-77.

competition."[56]  According to the Supreme Court, "[a] hallmark of the requisite competitive injury . . . is the diversion of sales or profits from a disfavored purchaser to a favored purchaser."[57]  In addition, "a permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time."[58]

However, before the Court can determine whether there is a price difference that may harm competition or whether there is a significant price difference that has existed for a substantial period of time, the Court must be able to determine the *prices* paid by Defendant and RKC to Plaintiff for the garage doors.  "The generally accepted rule is that 'price' for purposes of [the Robinson-Patman Act] means the amount actually paid by the purchaser, that is, the quoted invoice price less any discounts, offsets or allowances afforded the purchaser and not otherwise reflected in the invoice price."[59]  Thus, the relevant figure for the court to consider is the actual amount paid by the purchaser, *i.e.*, the invoice price less any discounts or other allowances not reflected in the invoice.[60]  In short, "price" under the Robinson-Patman Act means the net price received by the seller.[61]

Finally, the Court notes that an action to enforce a claim under the Robinson-Patman Act must be "commenced within four years after the cause of action accrued."[62]  "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's

---

[56] *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 434-35 (1983).

[57] *Volvo Trucks*, 546 U.S. at 177.

[58] *Id.*

[59] *Diehl & Sons, Inc. v. International Harvester Co.*,  445 F.Supp. 282, 286 (D.C.N.Y. 1978).

[60] *See Conoco Inc. v. Inman Oil Co.*, 774 F.2d 895, 902 (8th Cir. 1985).

[61] *See id.*

[62] 15 U.S.C. § 15b.

business."[63]

## V.     ANALYSIS

### A.     PUNITIVE DAMAGES

As explained above, Plaintiff seeks summary judgment on Defendant's claim for punitive damages in connection with Plaintiff's alleged Robinson-Patman Act violation.  Because Defendant admits that it is not entitled to punitive damages,[64] the Court will grant this portion of Plaintiff's Motion as unopposed.

### B.     COMPETITIVE INJURY

The Court has examined the underlying facts of this case and has viewed all inferences in a light most favorable to Defendant.   In addition, the Court has not made any credibility determinations or weighed the evidence.   Having done so, the Court concludes that Plaintiff has met its initial responsibility of demonstrating the absence of a genuine issue of material fact by demonstrating that there is no evidence to support an essential element of Defendant's Robinson-Patman Act counterclaim - a competitive injury.   Accordingly, the burden is on Defendant to provide evidence from which a rational trier of fact could find a competitive injury.

To establish a competitive injury, Defendant must show a reasonable possibility that a price difference may harm competition.  Defendant can meet this burden by showing a diversion of sales or profits from Defendant to RKC, or by providing evidence of a significant price reduction over a significant period of time from which the existence of a competitive injury could be inferred.

Defendant has shown a diversion of five sales from Defendant to RKC: (1) Senne

---

[63] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (citations omitted).

[64] *See* Memorandum in Opposition, 14

Construction/Topeka Spec Office Park; (2) Kelly Construction/Kansas Correctional Facility; (3) Kelly Construction/Douglas County Youth facility; (4) Miller-Stauch Construction/Airborne Express; and (5) Senne Construction/CJ Industries.  Each of these sales, however, occurred before early 2003.  Defendant asserted is counterclaim against Plaintiff on December 20, 2007.  Thus, it appears that any claims under the Robinson-Patman Act based on the loss of these five sales is barred by the four year statute of limitations.

Even if Defendant's claims based on these sales were not barred by the four year statute of limitations, Defendant still fails to provide evidence from which a rational trier of fact could find a competitive injury.  This is because Defendant has failed to provide any evidence of *price*.  Without evidence of the price paid by Defendant or RKC to Plaintiff for garage doors of a like grade and quality, Defendant cannot show a reasonable possibility that a price difference may harm competition or that a significant price difference existed for a significant period of time.

Price is the net amount paid to Plaintiff, which is the quoted invoice price less any discounts, offsets or allowances provided to the purchaser.  It is clear from the record that Plaintiff sold both residential and commercial garage doors to both Defendant and RKC.  It is also clear from the record that Plaintiff manufactured different kinds of residential doors and different kinds of commercial door.       The record does not, however, provide any evidence with respect to the actual prices paid by Defendant and RKC to Plaintiff for these different kinds of garage doors.  Indeed, although the record contains some evidence regarding to total amount of money paid by Defendant and RKC to Plaintiff for all residential garage doors for the years 2003, 2004 and 2005, there is nothing in the record which would allow a rational trier of fact to determine the net amount paid by Defendant or RKC to Plaintiff for any one of any kind of residential garage door.  Similarly, while

20

the record does contain evidence regarding the total amount paid by Defendant and RKC to Plaintiff for three kinds of commercial garage doors for the years ending 2003, 2004, and 2005, there is nothing in the record which would allow a rational trier of fact to determine the net amount paid by Defendant or RKC to Plaintiff for any one of any kind of commercial garage door.

This evidence in the record showing the annualized total amount spent by Defendant and RKC for all residential garage doors and for all of three kinds of commercial garage doors does not show the net amount paid for each individual door.  Furthermore, the record does not contain any invoices for the garage doors purchased by Defendant and RKC from Plaintiff, which would likely show the net amount paid by Defendant or RKC to Plaintiff.   Without knowing the base price paid for each kind of garage door, it is not possible for a rational trier of fact to know or determine the price paid to Plaintiff by Defendant or RKC for each door.  And without knowing the price paid to Plaintiff by Defendant or RKC for each garage door, a rational trier of fact cannot find a reasonable possibility that a price difference may harm competition.

Thus, the Court finds that Defendant has failed to meet its burden to provide evidence from which a rational trier of fact could find a competitive injury.

## VI.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has failed to provide any evidence to show a competitive injury, an essential element of its Robinson-Patman Act counterclaim.  The Court will therefore grant Plaintiff's Motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment on Counterclaim (doc. 65) is granted.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 27th day of January 2009.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties